UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

ROBERT HARDERS and KATHLEEN
HARDERS,

                    Plaintiffs,

       -against-                                1:09-CV-00032 (LEK/RFT)

ESTATE OF TRIEU TRAN and TU TRAN,
Individually and as Administrator of the
Estate of Trieu N. Tran, deceased; GUY J.
MURRAY; ESTATE OF LYNN TAITT-
ISAAC; and PETER  J. ISAAC, Individually
and as Administrator of the  Estate of LYNN
TAITT-ISAAC, deceased,

                   Defendants.

_____

## MEMORANDUM-DECISION AND ORDER

## I. INTRODUCTION

      Presently before the Court are the Motions for summary judgment by Estate of Trieu Tran

and Tu Tran (Dkt. No. 52) and Peter Isaac and Estate of Lynn Taitt-Isaac (Dkt. No. 51)

("Defendants"), and the Amended Motion for summary judgment by Guy Murray (Dkt. No. 40),

against Robert and Katherine Harders ("Plaintiffs").  Plaintiffs commenced this action by filing a

Complaint on December 22, 2008.  Dkt. No. 1.  Guy Murray ("Mr. Murray") filed an Answer on

February 10, 2009 (Dkt. No. 14); Estate of Trieu Tran and Tu Tran ("Tran") filed an Answer and

Cross-claim against Mr. Murray, and Estate of Lynn Tait Issac and Peter J. Isaac ("the Isaacs") (Dkt.

No. 18) and an Amended Answer and Cross-Claim on February 20, 2009 (Dkt. No. 20); the Isaacs

filed an Answer and Cross-claim against Estate of Trieu Tran, Tu Tran, and Mr. Murray on April 8,

2009 (Dkt. No. 23); and Estate of Trieu Tran and Tu Tran filed an Answer to Cross-claim on April

28, 2009 (Dkt. No. 31).

For the reasons that follow, the Motions for summary judgment by Tran and the Isaacs are denied with respect to both the claims and cross-claims against them.  Defendant Murray's Motion for summary judgment is granted with respect to both Plaintiffs' claims and Co-Defendants' cross-claims.


## II. BACKGROUND

This action arises out of a multi-car accident that involved nine different vehicles, which occurred in the westbound lanes of the New York State Thruway ("freeway") in Canajoharie, New York, at approximately 4:23 p.m. on March 5, 2007.  Dkt. No. 44, Ex. 5 at 4.  Defendants Trieu N. Tran and Lynn Taitt-Isaac were killed in the incident.  Dkt. No. 43, Ex. 4 at 1.  Actions commenced in the Northern District on behalf of Mr. Tran and Ms. Taitt-Isaac against various involved drivers, including Mr. Harders and Mr. Murray, have been settled, which leaves Plaintiffs' action as the only action remaining.  Tran v. Murray, Case No. 1:08-CV-00193; Isaac v. Murray, Case No. 1:08-CV-00561.

Trooper J.C. Salatel of the New York State Police prepared several MV-104A accident reports in connection with the incident.  SPPE33000019 (Dkt. No. 43, Ex. 3 at 1), SPPE33000020 (Dkt. No. 43, Ex. 3 at 2), and SPPE33000021 (Dkt. No. 43, Ex. 3 at 3).  Also, Trooper Salatel and Investigator Jonathan Kelly completed a 9-page incident report between March 5, 2007 and March 14, 2007.  Dkt. No. 43, Ex. 4.  Finally, Investigator Michael J. MacIntosh, a collision reconstruction specialist, completed a collision reconstruction summary report in July 2007.  Dkt. No. 43, Ex. 5.

The nine vehicles involved in the incident were a blue Daewoo operated by Defendant Trieu

Tran ("Tran vehicle"); a dark green Honda Civic operated by Defendant Lynn Taitt-Isaac, with her husband, Defendant Peter Isaac, as a passenger ("Isaac vehicle"); a white Infiniti operated by Guy Murray ("Murray vehicle"); a Schneider tractor-trailer operated by Plaintiff Robert Harders ("Schneider trailer"); a Wal-Mart tractor-trailer operated by non-party Timothy DeGrace ("Wal-Mart trailer"); an Arnold Transportation tractor-trailer operated by non-party Henry Meade ("Arnold trailer"); a GMC pickup truck operated by non-party Darren Brandt ("Brandt vehicle"), a Chevrolet Cavalier operated by non-party Nicholas Renna ("Renna vehicle"); and a white van operated by non-party William Parker ("Parker vehicle").  See Dkt. No. 43, Ex. 5 at 1-2.  Peter Isaac, Guy Murray, Kathleen Harders, Timothy DeGrace, Henry Meade, Darren Brandt, and Nicholas Renna were each deposed in connection with the lawsuits arising out of the incident.  Dkt. No. 44, Ex. 6; Dkt. No. 45, Ex. 7; Dkt. No. 46, Ex. 8; Dkt. No. 46, Ex. 9; Dkt. No. 47, Ex. 10; Dkt. No. 48, Ex. 11; and Dkt. No. 48, Ex. 12.  Two investigators, MacIntosh and McLaughlin, both collision reconstruction specialists, were deposed as non-party witnesses.  Dkt. No. 49, Ex. 13; Dkt. No. 50, Ex. 14.

Weather conditions elsewhere on the freeway were sunny and clear during the afternoon of the incident; however, the incident occurred within a 200 to 300 foot zone where snow blowing off of the Mohawk River created a whiteout in which driver visibility was at or near zero.  Dkt. No. 44, Ex. 6 at 19; Dkt. No. 45, Ex. 7 at 16; Dkt. No. 46, Ex. 8 at 32; Dkt. No. 49, Ex. 13 at 20-21.  The first of the nine relevant vehicles to enter the whiteout was the Tran vehicle.  Dkt. No. 43, Ex. 5 at 2; Dkt. No. 49, Ex. 13 at 52-53; see Dkt. No. 49, Ex. 13 at 56-57.  Upon entering the whiteout, Mr. Tran either brought his vehicle to a stop or slowed it down.  Dkt. No. 44, Ex. 6 at 23-24; Dkt. No. 45, Ex. 7 at 55, 63; Dkt. No. 49, Ex. 13 at 152; Dkt. No. 49, Ex. 13 at 53-54.

3

The next vehicle to enter the whiteout was the Isaac vehicle.  Dkt. No. 43, Ex. 5 at 2; Dkt. No. 49, Ex. 13 at 53.  Before encountering the whiteout, Ms. Taitt-Isaac was driving at approximately 70 miles per hour, and Peter Isaac was reading in the passenger seat.  Dkt. No. 44 at 18, 61.  Upon seeing the whiteout, but before their vehicle entered it, Ms. Taitt-Isaac said "uh oh," and began slowing down.  Id. at 61-63, 117.

The Isaacs did not stop and pull over before entering the whiteout because, as Mr. Isaac stated in his deposition, they believed that they could negotiate it safely by slowing down.  Id. at 128-129.  The Isaac vehicle entered the whiteout at between 30 and 40 miles per hour in the right lane.  Id. at 21-22.  Peter Isaac stated that visibility inside the whiteout was near zero, such that he could only see a foot in front of the front bumper of the Isaac vehicle, and could not see anything to his left or right.  Id. at 22, 110.  A few seconds after the Isaac vehicle entered the whiteout, its front bumper struck the rear of the Tran vehicle.  Id. at 24-25.

According to Peter Isaac, the Tran vehicle had its brake lights on and was not moving.  Id. at 23-24.  The Isaacs did not see the Tran vehicle until they were within 4 or 5 feet of it, by which point Mr. Isaac believes it was too late to stop.  Id. at 23.  The impact with the Isaac vehicle propelled the Tran vehicle farther west along the freeway, but Mr. Isaac was not sure how much farther.  Id. at 26-27, 79,  112.  Mr. Isaac did not notice what happened to the Tran vehicle after the initial collision.  Id. at 25.  Mr. Isaac never saw the Murray vehicle, and nothing about the collision between the Isaac vehicle and the Tran vehicle gave Mr. Isaac the impression that the Tran vehicle had been in a prior collision.  Id. at 64, 69.

One or two minutes after their vehicle hit the Tran vehicle, the Isaacs got out of their vehicle, fearing that it was on fire.  Id. at 27-28, 119.  Ms. Taitt-Isaac then got back in the vehicle while Mr.

4

Isaac walked onto the right shoulder. Id. at 28, 119-121.  While on the shoulder, Mr. Isaac heard a

vehicle approach and saw a large truck strike the Isaac vehicle. Id. at 28, 83.  After the incident,

luggage from the Isaac vehicle was found underneath the Schneider trailer, and a trail led from the

Schneider trailer back to the Isaac vehicle, suggesting that it might have been the  Schneider trailer

that struck the Isaac vehicle. Dkt. No. 49, Ex. 13 at 34; see also Dkt. No. 43, Ex. 5 at 2; Dkt. No.

49, Ex. 13 at 59.

Mr. Murray generally kept his car on cruise control between 60 and 65 miles per hour prior

to entering the whiteout. Dkt. No. 45, Ex. 7 at 16.  Less than a mile east of the whiteout, Mr.

Murray passed two tractor-trailers, which were the Wal-Mart trailer and the Schneider trailer. Id. at

18, 48-49, 56, 60, 90-91.  Just past Exit 29, Mr. Murray came over a hill and saw the whiteout. Id.

at 17.  At this point, Mr. Murray was still in the left lane on account of having passed the two

trailers. Id. at 49-50, 61.  Mr. Murray applied his brakes and slowed down to around 40 miles per

hour, but still entered the whiteout within a matter of seconds. Id. at 17, 19.  In the whiteout, Mr.

Murray could not see the hood of his own vehicle, any lane markings, or any other vehicles. Id. at

19, 23, 61.

Mr. Murray emerged from the whiteout several seconds later and was still in the left lane.

Id. at 21, 28-29.  While in the whiteout, however, Mr. Murray had "clipped an object." Id. at 19.

He believed the object was a vehicle given its presence in the travel lanes of the freeway, and later

concluded that it had been a blue vehicle (which would suggest it was the Tran vehicle) because he

found blue paint on the bumper of his vehicle. Id. at 19-22.  Mr. Murray reached the conclusion that

the Tran vehicle must had been stopped when he clipped it because he believed that his vehicle

would have been knocked off of the road by the force of the impact if the Tran vehicle had been

moving.  Id. at 55, 63.  Mr. Murray stated in his deposition that he struck only the one vehicle.  Id. at 33.

It was later determined that the right side of the Murray vehicle hit the passenger side of the Tran vehicle, demonstrating that the Tran vehicle was already facing eastbound (against traffic) as a result of the prior collision with the Isaac vehicle.  Dkt. No. 49, Ex. 13 at 97-98, 123-126, 174.  Mr. Murray acknowledged that he had seen blowing snow on the freeway on prior occasions, but testified that he had "[n]ever in [his] life" seen whiteout conditions comparable to those he encountered on March 5, 2007.  Dkt. No. 45, Ex. 7 at 70-71, 78.

Mr. Harders, a veteran truck driver, was driving a Schneider trailer that was equipped with a governor that kept its speed at or below 65 miles per hour.  Dkt. No. 46, Ex. 8 at 8-9, 66.  Before encountering the whiteout, Mr. Harders was traveling at 60 miles per hour in the right lane, with the Wal-Mart trailer behind him.  Id. at 33-34.  Upon observing the whiteout, Mr. Harders began gearing down and braking, but his Schneider trailer entered the whiteout within seconds.  Id. at 35.  Once in the whiteout, Mr. Harders could not see any other vehicles, lines on the road, or guardrails; in fact, he could not even see past his windshield or see his mirrors.  Id. at 36, 48, 120-121, 138.  Mr. Harders did not attempt to pull over.  Id. at 131.

Inside the whiteout, Mr. Harders felt an impact, as though he had gone over a large bump.  Id. at 37.  This impact caused Mr. Harders to be thrown out of his seat and hit his head.  Id. at 38.  After the impact, Mr. Harders was concerned that the truck might jackknife or fall over, so he kept driving in an attempt to keep the truck upright.  Id. at 38-39.  Mr. Harders did not remember coming to a stop, but other evidence establishes that he stopped on the right shoulder, outside the whiteout.  Id. at 39; Dkt. No. 43, Ex. 5 at 2; Dkt. No. 49, Ex. 13 at 24.  Mr. Harders never saw a blue vehicle,

6

and he recalled only the one "thump." Dkt. No, 46, Ex. 8 at 45, 60, 124.

Non-party Timothy DeGrace, a veteran truck driver, stated that the Schneider trailer had just passed his Wal-Mart trailer when both trailers entered the whiteout in the right lane. Dkt. No. 46, Ex. 9 at 8-9, 31, 44, 48, 84. Upon seeing Mr. Harders braking, Mr. DeGrace braked and saw the Schneider trailer disappear into the whiteout. Id. at 44, 96-97. According to Mr. DeGrace, the appearance of the whiteout was sudden and unexpected, and he could not see more than two feet in front of him while once he was in the whiteout. Id. at 98, 121. The Wal-Mart trailer ultimately hit the Tran vehicle and came to rest along the left shoulder of the freeway, near the center median. Dkt. No. 43, Ex. 5 at 3; Dkt. No. 48, Ex. 12 at 25, 61. When DeGrace got out of the Wal-Mart trailer, he observed that the Isaac vehicle was well behind him, facing east in the right shoulder of the westbound lanes. Dkt. No. 46, Ex. 9 at 92-93.

Non-party Henry Meade, a veteran truck driver traveling in the Arnold trailer, was driving about 60 miles per hour immediately prior to the incident. Id. at 8-10, 23, 30. Shortly after 4:00 p.m., Mr. Meade was in the right lane when he observed the whiteout, began to slow down, and entered the whiteout within seconds. Id. at 30-32. Mr. Meade stated that the appearance of the whiteout was sudden and unexpected. Id. at 79. In the whiteout, Mr. Meade stated that he "had zero visibility," could barely see the hood of his vehicle, and could not see any other vehicles. Id. at 32, 78. Mr. Meade continued to slow down inside the whiteout and eventually came to a stop five feet behind the Tran vehicle, with the Wal-Mart trailer to his left. Id. at 33-34. The Isaac vehicle was "further back" from Mr. Meade's position when Mr. Meade stopped. Id. at 70, 71.

Non-party Darren Brandt entered the whiteout traveling at 70 to 71 miles per hour and could see the Wal-Mart trailer in front of him. Id. at 16-17. Brandt became aware of the whiteout when

the Wal-Mart trailer "disappeared" into it "complete[ly]" and "instant[ly]." Id. at 22, 53. Brandt

stated that the appearance of the whiteout was sudden and unexpected. Id. at 19, 49. Brandt entered

the whiteout in the left lane. Id. at 19. In the whiteout, Brandt could see "nothing" apart from the

left guardrail. Id. at 23, 43, 59. He attempted to use the guardrail as a guide, but collided with the

rear end of the Wal-Mart trailer. Id. at 24, 59. The Brandt vehicle caught fire in the collision, and

Brandt exited his vehicle just before it exploded. Id. at 25-26.

　　　Non-party Nicholas Renna was driving in a Chevrolet Cavalier and was traveling at the

speed limit prior to entering the whiteout. Dkt. No. 48, Ex. 12 at 7-10, 12. Just west of

Canajoharie, Mr. Renna encountered the whiteout, which he entered in the right lane. Id. at 14-16.

According to Mr. Renna, the appearance of the whiteout was sudden and unexpected, and the

visibility inside the whiteout was not more than thirty feet. Id. at 16-17, 33. Mr. Renna saw a truck,

the Arnold trailer, in front of him in the whiteout, and a collision ensued within a matter of seconds.

After the accident, the Renna vehicle ended up underneath the rear end of the Arnold trailer. Dkt.

No. 43, Ex. 5 at 3; Dkt. No. 48, Ex. 12 at 18-20. William Parker entered the whiteout after the

Renna vehicle and stopped his white van behind the Brandt vehicle. Dkt. No. 43, Ex. 5 at 2-3; see

Dkt. No. 48, Ex. 11 at 44. The Parker vehicle sustained some scorching damage as a result of its

proximity to the fire on the Brandt vehicle. Dkt. No. 43, Ex. 5 at 3.

　　　After the accident, the State Police were called to investigate and determine what had

happened. Dkt. No. 49, Ex. 13 at 10-12. Trooper Salatel was the first officer on the scene. Id. at

130. Investigator Kelly was in charge of the investigation as a whole. Id. at 18. The investigation

included a reconstruction of the incident by Investigator MacIntosh, who was assisted by

Investigator McLaughlin. See id. at 12-13; Dkt. No. 50, Ex. 14 at 10-12. MacIntosh and

McLaughlin were certified accident reconstructionists, each of whom had investigated hundreds of cases.  Dkt. No. 49, Ex. 13 at 8, 10, 47; Dkt. No, 50, Ex. 14 at 78.  Each had been qualified as an accident reconstruction expert in court.  Dkt. No. 49, Ex. 13 at 10; Dkt. No. 50, Ex. 14 at 8-9.  However, Trooper Salatel was not an accident reconstructionist, and did not have any relevant expertise outside of basic collision school at the police academy.  Dkt. No. 50, Ex. 14 at 58.

Trooper Salatel prepared MV-104A reports immediately after the accident.  Dkt. No. 49, Ex. 13 at 19; see Dkt. No. 43, Ex. 3.  This report indicates that the Murray vehicle "sideswiped" the Tran vehicle before the Isaac vehicle hit the Tran vehicle.  See Dkt. No. 43, Ex. 3 at 1-2.  Trooper Salatel's conclusions were informed by the fact that the Murray vehicle was no longer present at the scene when the police arrived.  Dkt. No. 49, Ex. 13 at 23, 80.  As a result, the police learned of the involvement of the Murray vehicle belatedly, and there was confusion as to where in the established sequence of events the Murray vehicle had hit the Tran vehicle.  See id. at 80-81.  There is some physical and testimonial evidence in this case that contradicts the sequence of events presented in Trooper Salatel's MV-104A reports. Dkt. No. 49, Ex. 13 at 56-57, 152.

Trooper Salatel and Investigator Kelly prepared an incident report in the weeks after the accident.  Id. at 82-85; see Dkt. No. 43, Ex. 4.  According to Trooper Salatel's "narrative" section of the incident report,  the Tran vehicle was "stopping or slowing down in white out conditions [and was] struck in the rear by Lynn Tait-Isaac," after which "both vehicles remained in the lanes during the white out conditions."  Id. at 3.  Trooper Salatel then states that after Mrs. Isaac re-entered her vehicle, "Robert K. Harders, operating 2007 freightliner tractor-trailer (v-3) entere[d] the white out condition and [was] unable to see the 2000 Honda (v-2) and [struck] same."  Id.  Next, according to this narrative, Timothy Degrace, "operating 2007 international tractor-trailer (v-4) enter[ed] white

9

out conditions and [was] unable to see 2005 Daewoo (v-1) and [struck] same in side of driver's door."  Id.  The narrative next states that Darren Brandt, "operator of 2003 GMC pick-up (v-5) traveling behind the 20078 international [trailor] rear ends same due to not being able to see in white out condition," and that "the impact caused the 2003 GMC pick-up (v-5) to burst into flames."  Id.  Thereafter, Trooper Salatel states that "Henry T. Meade, operator of 2008 freight liner tractor-trailer (v-6) enter[ed] white out condition and stop[ped] before striking 2005 Dawewoo (v-1)."  Id.  Subsequently, according to Trooper Salatel, the "2007 freight liner (v-6) [was] rear-ended by" Nicholas Renna, who was "operating a 2003 Chevrolet (v-7)."  Id.  The narrative next finds that William Parker, "operator of 2005 Chevrolet Van (v-8), stop[ped] his vehicle prior to striking the 2003 GMC pick-up (v-5) and exit[ed] his vehicle for safety."  Id.  After that, "[t]he fire of the 2003 GMC pick-up (v-5) scorch[ed] the paint on the 2005 Chevrolet (v-8)."  Id.  Finally, the report concludes that "[i]t was later determined that Guy J. Murray . . . also struck the 2005 Daewoo."  Id.

Investigator Kelly reached substantially similar conclusions to Trooper Salatel regarding the collision between Mr. Tran and the Isaacs, the collision between the Mr. Harders and the Isaacs, the collision between Mr. Degrace and Mr. Tran, the collision between Mr. Brandt and Mr. DeGrace, the fact that Mr. Meade came to a stop before hitting the Tran vehicle, the collision between Mr. Renna and Mr. Meade, and that Mr. Parker came to a stop before hitting the Brandt vehicle.  Id. at 4.  However, Investigator Kelly stated that Mr. Murray "struck an unknown vehicle, that was later determined to be the Honda" (presumably referring to the Isaac vehicle), whereas Trooper Salatel stated that Mr. Murray struck the Tran vehicle.  Id.

Investigator MacIntosh and his team conducted a thorough investigation in furtherance of their collision reconstruction efforts.  Dkt. No. 49, Ex. 13 at 19-41; Dkt. No. 50, Ex. 14 at 10-12.

Investigator MacIntosh observed the scene of the incident at a time when every relevant vehicle except the Murray vehicle was still in its final resting position. Dkt. No. 49, Ex. 13 at 23. He inspected each vehicle to determine the collision(s) in which it had been involved. Id. at 34-36. He reviewed various witnesses' statements to determine whether they were consistent with the physical evidence. Id. at 89-90. Several months after the incident, Investigator MacIntosh released his collision reconstruction report. Id. at 45; see Dkt. No. 43, Ex. 5. The report was peer reviewed by Investigator McLaughlin, who agreed with Investigator MacIntosh's conclusions. Dkt. No. 49, Ex. 13 at 45, 171; Dkt. No. 50, Ex. 14 at 13.

Investigator MacIntosh concluded that the primary contributing factor to the occurrence of the multi-car accident was the whiteout, within which there was zero visibility. Dkt. No. 49, Ex. 13 at 167; see id. at 20-21; Dkt. No. 50, Ex. 14 at 47. However, other contributing factors that Investigator MacIntosh found were that the Tran vehicle and the Isaac vehicle didn't stop and were hit in the freeway's travel lanes. Dkt. No. 49, Ex. 13 at 167-168; see Dkt. No. 50, Ex. 14 at 48. Investigator MacIntosh compiled a timeline of events reflecting that the first relevant collision was between the Tran vehicle and the Isaac vehicle. Dkt. No. 43, Ex. 5 at 2-3; see Dkt. No. 49, Ex. 13 at 21-22. This impact "spun" the Tran vehicle, leaving the Isaac vehicle in the right lane and the Tran vehicle in the center of the freeway. Dkt. No. 49, Ex. 13 at 58, 153. There was no subsequent impact between the Tran vehicle and the Isaac vehicle. Id. at 59.

Next, the Murray vehicle hit the Tran vehicle on its passenger side, "reorient[ing]" the Tran vehicle to set it up for its later impact with the Wal-Mart trailer. Id. at 57-59, 98, 174. Unfortunately, because Mr. Tran tragically died as a result of the accident at issue, he was not available to establish the sequence of his collisions with the Murray and Isaac vehicles. However,

11

based on Mr. Murray's statement and the vehicles' contact points, Investigator MacIntosh concluded that the Murray-Tran collision occurred after the Isaac-Tran collision.  Id. at 56-57, 152. Investigator MacIntosh believed that the Tran vehicle was stopped at the time that the Murray vehicle hit it.  Id. at 152.  After that, the Schneider trailer "overrode" the Isaac vehicle in the right lane, near the shoulder.  Dkt. No. 43, Ex. 5 at 3; Dkt. No. 49, Ex. 13 at 59-60, 116.  The Schneider-Isaac collision likely did not affect the position of the Tran vehicle in any way.  Dkt. No. 49, Ex. 13 at 60.

Investigator MacIntosh concluded that the Murray vehicle was involved in only one collision, with the Tran vehicle, and never struck the Isaac vehicle.  Id. at 56, 59.  Similarly, the Schneider trailer was involved in only one collision, with the Isaac vehicle, and never struck the Tran vehicle.  Id. at 59-60, 165.  It is noted that all of the allegations in Plaintiffs' Complaint concern the collision between the Schneider trailer and the Isaac vehicle rather than any alleged collision with the Tran or Murray vehicles.  Dkt. No. 42, Ex. 1 at ¶20, ¶35, ¶47.

Investigator MacIntosh disagreed with several of the conclusions set forth in the MV-104A reports and police incident report.  Dkt. No. 49, Ex. 13 at 86-87.  According to Investigator MacIntosh, it was not possible that the Murray vehicle could have sideswiped the Tran vehicle before the Isaac vehicle hit the Tran vehicle.  Id. at 172.  According to his deposition testimony, Investigator MacIntosh reached this conclusion "[b]ecause for the damage to occur on the Daewoo on the passenger side, it would have had to have been going backwards down the road during the sideswipe, because the two sides don't match up.  So it had to have been rotated after the . . . initial collision with the Honda, which caused the front contact and then into the rear wheel well, spinning it to the side, opening it up for the strike with the Walmart tractor-trailer."  Id. at 174.  Therefore,

12

Investigator MacIntosh concluded that if the Tran vehicle had indeed been "sideswiped" before the Isaac vehicle collided with it, this sideswipe would have involved an unknown vehicle, not the Murray vehicle.  Id. at 173.

## III. DISCUSSION

### A. Legal Standard for Summary Judgment Motions

The standard for summary judgment is well-established.  Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(c).  A material fact is genuinely disputed only if, based on that fact, a reasonable jury could find in favor of the non-moving party.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  On a motion for summary judgment, all evidence must be viewed and all inferences must be drawn in a light most favorable to the nonmoving party.  See City of Yonkers v. Otis Elevator Co., 844 F.2d 42, 45 (2d Cir. 1988).

The party seeking summary judgment bears the initial burden of "informing the district court of the basis for its motion" and identifying the matter "it believes demonstrate[s] the absence of a genuine issue of material fact."  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Upon the movant's satisfying that burden, the onus then shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial."  Anderson, 477 U.S. at 250.  The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts," Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986), but "must set

forth specific facts showing that there is a genuine issue of fact for trial." First Nat'l Bank of Az. v. Cities Serv. Co., 391 U.S. 253, 288 (1968).

**B. Tran Motion for Summary Judgment**

Defendant Tran argues in favor of summary judgment with respect to the claims brought by Robert and Kathleen Harders and the cross-claims brought by Estate of Lynn Isaac and Peter Isaac based upon the emergency doctrine. In New York, the emergency doctrine defense requires meeting a two-pronged test: (1) whether the actor was faced with a sudden and unexpected situation which left him little to no time for deliberation; and (2) whether he acted as a reasonable and prudent person would once he was in that situation. Barber v. Young, 238 A.D.2d 822, 823; 656 N.Y.S.2d 529, 530-31 (3d Dep't 1997). If those two prongs are satisfied, then the party is not negligent under New York law. Id. The emergency doctrine is not applicable, however, when the party seeking relief from the emergency doctrine should reasonably have anticipated and been prepared to deal with the situation with which he was confronted. Hardy v. Sicuranza, 133 A.D.2d 138, 518 N.Y.S.2d 812 (1987).

In a situation "where the emergency is not created by defendant's own acts, she is not obliged to exercise best judgment." Palmer v. Palmer, 31 A.D.2d 876 (3 Dep't 1969). The fact that an outcome might have been better had a driver faced with a sudden emergency acted differently is not enough to establish a driver's negligence. Id. Similarly, an error in judgment is not sufficient to constitute negligence. Lamey v. County of Courtland, 285 A.D.2d 885 (3 Dep't 2001). In an emergency situation, a driver will not be held to the same standard  of care that would be applicable to a driver in a non-emergency situation. This rule is applied so long as, when confronted with the emergency, the person reacts as a reasonable person would when faced with similar circumstances;

14

if this is true, no negligence can be found.  <u>Pettica v. Williams</u>, 223 A. D.2d 987 (3d Dep't 1996);

<u>Wenck v. Zillioux</u>. 246 A.D.2d 717 (3d Dep't 1998).

 The Court finds that there are triable issues of fact with respect to whether the emergency

doctrine applies to Mr. Tran's conduct.  Assuming *arguendo* the first element of the emergency

doctrine is satisfied, it is unclear whether Mr. Tran fulfilled the second element by behaving as a

reasonable and prudent person would under those circumstances once he entered the whiteout.  A

reasonable and prudent driver under those weather conditions might not have come to a complete

stop on an active lane on the freeway, which presented a significant hazard to other drivers.  This

accident was investigated by members of the New York State Police, including Investigators

Michael MacIntosh and Bruce McLaughlin, who are trained investigators and qualified experts in

the field of accident reconstruction.  Ex. D at 7-10; Ex. E at 7-8.  They conducted an accident

reconstruction of this incident, and gave deposition testimony that Tran left his vehicle in the lane of

traffic on the freeway.  Both investigators concluded that, in addition to the primary cause of the

accident (whiteout conditions), this was a contributing factor to the accident.  Ex. D at 167-168; Ex.

E at 48.

 Under New York law, it is axiomatic that a vehicle stopped in the lane of traffic on the

freeway presents a hazard to other vehicles: a motor vehicle driver has a duty to keep proper control

of their vehicle and to not stop suddenly or slow down without proper signaling so as to avoid a

collision.  <u>Niemiec v. Jones</u>, 237 A.D.2d 267,654 N.Y.S.2d 163 (2d Dep't 1997).  Furthermore, no

person shall stop or suddenly decrease the speed of a vehicle without first giving an appropriate

signal to the driver of any vehicle immediately to the rear when there is an opportunity to give such

signal.  N.Y.S. Vehicle & Traffic Law §1163(c).  The driver of a stopped vehicle can be held to be

15

negligent based on the facts and circumstances of the individual case. For example, in Tutrani v. County of Suffolk, 2009 N.Y. Slip. Op. 3716; 64 A.D.3d 53; 878 N.Y.S.2d 412, a police officer responding to a call cut in front of another vehicle and brought his vehicle to an abrupt halt causing an accident behind him. The court found not only that the police officer was negligent, but his actions rose to the level of reckless disregard for the safety of others. Id.

Furthermore, it does not appear that the Tran vehicle activated any hazard lights, sounded any horn, or took any other steps to warn subsequent traffic of his potentially hazardous position on the freeway. Dkt. No. 54, Ex. C at 68-69. The use or non-use of hazard lights is a fact that should also be considered when determining negligence in a situation such as this. In Sheffer v. Critoph, 13 A.D.3d 1185, 787 N.Y.S.2d 584 (4th Dep't 2004), a vehicle was stopped in a driving lane of traffic at night without any illuminating lights and was struck in the rear by another vehicle. The fact that the stopped vehicle had no illuminating lights precluded summary judgment.

In Gerse v. Neviovich, 9 A.D.3d 384, 780 N.Y.S.2d 615 (2d Dep't 2004), the court again declined to grant summary judgment, finding that a genuine issue of material fact existed due to the failure to use hazard lights by the driver of a rear ended vehicle. The New York Court of Appeals has held that the emergency doctrine is applicable if the evidence supports a finding that the party was confronted by a sudden and unexpected circumstance which left little or no time for thought, deliberation, or consideration. Caristo v. Sanzone, 96 N.Y.2d 172, 726 N.Y.S.2d 334 (N.Y. 2001). Although Tran may or may not have originally been confronted with an unexpected circumstance, the Court finds that, based upon the record before it, there is an issue of fact as to whether he might have had sufficient amount of time after confronting the whiteout to take reasonable steps to avoid contact with the Isaac vehicle.

16

Additionally, the cases cited by Defendants involve the issue of whether or not the lower court should have charged an emergency doctrine to a jury at trial.  E.g., Amaro v. City of New York, 386 N.Y.S.2d 19, 351N.E.2d 665 (N.Y. 1976).  These cases do not deal with the appropriateness of granting summary judgment pursuant to an emergency doctrine analysis.  It has been found that except in the most egregious circumstances, it is normally left to the trier of fact to determine if a particular situation rises to the level of an emergency.  Stevenson v. Recore, 221 A.D.2d 834, 633 N.Y.S.2d 863 (3d Dep't 1995).  And, as previously noted, encountering an emergency does not completely absolve one from liability, it simply requires that one's conduct be measured against that of a reasonable person confronted with similar circumstances in a similar time frame within which to react.  Ferrer v. Harris, 55 N.Y.2d 285,449 N.Y.S.2d 162.  It simply cannot be said as a matter of law that Tran's actions under these circumstances were reasonable.  At the very least, Tran's actions raise triable issues of material fact that should be decided by an appropriate factfinder.

For the same reasons, the Court finds that summary judgment is not warranted with respect to the cross-claims against Tran by the Isaacs.  Genuine disputes exist regarding whether Mr. Tran faced a sudden and unexpected situation where he had no time to deliberate, and also whether he acted reasonably and prudently once he was in this situation.  As a consequence, the Court concludes that summary judgment is inappropriate with regard to both the claims and cross-claims against Tran.

### C. Isaac Motion for Summary Judgment

The Court further concludes that there are triable issues of fact as to whether the emergency conditions doctrine applies to the conduct of the Isaacs. Assuming *arguendo* the first element of the

emergency doctrine is satisfied, there also is evidence in the record which would suggest the Isaacs may not have acted reasonably and prudently once they entered the whiteout.  Encountering an emergency does not completely absolve one from liability, it simply requires that one's conduct be measured against that of a reasonable person confronted with similar circumstances in a similar time frame within which to react.  Ferrer v. Harris, 55 N.Y.2d 285, 449 N.Y.S.2d 162 (N.Y. 1982).  The Isaacs' actions clearly raise issues of material fact, and therefore it simply cannot be said as a matter of law that the Isaacs' actions under these circumstances were reasonable.

Evidence that suggests the Isaacs did not behave reasonably under the circumstances includes their failure to pull over once they entered the whiteout; their decision to leave their vehicle in the middle of the freeway where it presented a hazard to subsequent traffic; and their failure to take any actions whatsoever to warn any other passing motorists of their presence, such as activating their headlights, horn, or hazard lights.  Dkt. No. 44, Ex. 6 at 27-28, 73, 119, 127, 129-130, 147-48. Subsequent to the initial contact with the Tran vehicle, the Isaac vehicle came to a rest in the right lane of traffic of the freeway.  Id.  The car was still running, but there was no effort whatsoever by Mrs. Isaac to move the vehicle off of the freeway.  Id.  Indeed, there was no conversation between the Isaacs regarding this, nor was there any concern on the part of Mr. Isaac that their vehicle would present hazards to subsequent traffic.  Id.  Rather than attempt to move the vehicle, they simply exited the vehicle, leaving it in the freeway.  Mrs. Isaac returned to the vehicle where she remained until the impact with the Schneider trailor.  Id.

After the initial impact with the Tran vehicle, the Isaacs remained in their vehicle for one to two minutes before exiting the vehicle.  Id. at 138.  Further time elapsed as Mr. Isaac walked over to the shoulder and then observed his wife reentering the vehicle where she sat for another 10 to 15

18

seconds prior to the impact with Schneider trailor.  Id. at 125.  Additionally, whiteout conditions were intermittent, Dkt. No. 60, Ex. A at 140-41, and there might have been clear opportunities for the Isaacs to move their vehicle to the shoulder.  This would suggest that once they were in the whiteout, Mrs. Isaac may have had sufficient time to move her vehicle into relative safety on the shoulder of the freeway.

Finally, the Isaacs took no further action to attempt to warn other vehicles of their presence in the freeway despite the hazard they presented to oncoming traffic.  They never sounded their horn, nor did they put on their hazard lights.  Id. at 131, 147.  The Isaac's failure to take any such steps to warn other motorists that their vehicle was stopped in traffic might suggest that they did not act in a reasonable and prudent manner under the circumstances.

Investigator MacIntosh and Investigator McLaughlin each state that the Isaacs left their vehicle in the lane of traffic on the New York State freeway.  Dkt. No. 49, Ex. 13 at 60; . Both investigators concluded that this was a contributing factor to the accident.  Dkt. No. 49, Ex. 13 at 167-168; see Dkt. No. 50, Ex. 14 at 48.  As the Court noted earlier, it is axiomatic that a vehicle stopped in the lane of traffic on the freeway presents a hazard to other vehicles.  A motor vehicle driver has a duty to keep proper control of their vehicle and to not stop suddenly or slow down without proper signaling so as to avoid a collision.  Niemiec v. Jones, 237 A.D.2d 267, 654 N.Y.S.2d 163 (2d Dep't 1997).

Furthermore, no person shall stop or suddenly decrease the speed of a vehicle without first giving an appropriate signal in the manner provided herein to the driver of any vehicle immediately to the rear when there is an opportunity to give such signal.  N.Y.S. Vehicle & Traffic Law §1163(c).  Moreover, the use or non-use of hazard lights is a fact that should also be considered

when determining negligence in a situation such as this.  In <u>Sheffer v. Critoph</u>, 13 A.D.3d 1185,787

N.Y.S.2d 584 (4th Dep't 2004), a vehicle was stopped in a driving lane of traffic at night without

any illuminating lights and was struck in the rear by another vehicle.  The fact that the stopped

vehicle had no illuminating lights precluded summary judgment.  In <u>Gerse v. Neyjovich</u>, 9 A.D.3d

384,780 N.Y.S.2d 615 (2d Dep't 2004), the court again declined to grant summary judgment finding

that a genuine issue of material fact existed due to the failure to use hazard lights by the driver of a

rear ended vehicle.

The Court therefore finds that summary judgment is not warranted with respect to the claims

against the Isaacs.  Furthermore, the Court notes that the same reasoning would apply to any cross-

claims against the Isaacs.

### D. Murray Motion for Summary Judgment

The Court finds that summary judgment is warranted with respect to the Plaintiffs' claims

and Co-Defendants' cross-claims against Defendant Murray.  Mr. Murray argues for summary

judgment based upon two distinct justifications: first, that he was not the proximate cause of

Plaintiffs' injuries; and second, that he cannot be found guilty because the emergency doctrine is

applicable to his actions.  Dkt. No. 37.

On the proximate cause argument, Mr. Murray makes a *prima facie* case by providing

evidence that his collision with another car was causally separate from the accident between the

Schneider trailer and the Isaac vehicle, thus suggesting that Mr. Murray was not the proximate cause

of Plaintiffs' injuries.  Dkt. No. 37 at 3-4.  The onus thus shifts to Plaintiffs to set forth specific facts

demonstrating a genuine issue for trial, Anderson, 477 U.S. at 250, but as Plaintiffs have failed to

file a response to Murray's Motion for summary judgment, the Court finds that Plaintiffs have not

met their burden.  Therefore, the Court concludes that summary judgment is warranted with respect to Plaintiffs' claims against Defendant Murray.

In addition to Plaintiffs' claims against Defendant Murray, Murray's Co-Defendants have raised cross-claims against him (Dkt. Nos. 18 and 23).  While Plaintiff failed to file a Response to Defendant Murray's Motion for summary judgment, Murray's Co-Defendants did respond, arguing that there is a genuine issue of material fact as to whether Murray was the proximate cause of Plaintiffs' injuries.

It is well-settled in New York law that in multiple-vehicle accidents when there are questions of fact as to the sequence of collisions, it cannot be said as a matter of law who is the proximate cause of the injuries.  See generally, Vavoulis v. Adler, 43 A.D.3d 1154, 842 N.Y.S.2d 526 (2d Dep't 2007); Geschwind v. Hoffman, 285 A.D.2d 448, 727 N.Y.S.2d 155 (2d Dep't 2001).  In particular, when there are conflicting statements as to how an accident occurred there is a triable issue of fact as to whether a particular defendant's conduct caused or contributed to the accident.  Omrami v. Socrates, 227 A.D.2d 459, 642 N.Y.S.2d 932, 933 (2d Dep't 1996); Burchette v. Aklah, 2002 WL 31663225 (N.Y. Sup. App. Term Nov. 14, 2002)("parties' conflicting accounts raise material factual issues involving, *inter alia,* the time interval(s) between . . . the chain reaction collisions and the sequence of impacts between the three vehicles").

In Mangual v. Pleas, No. 02 Civ. 8311, 2004 WL 736817 (S.D.N.Y. April 6, 2004), the plaintiff was a passenger in a vehicle operated by his son when there was a collision between their vehicle and a tractor-trailer operated by the Defendant and owned by Defendant's business.  The record contained conflicting accounts of how the accident occurred from the involved parties, and the court held that this created a credible dispute.  Id. at 3.  The court held that "[s] harp conflicts of

evidence such as the ones here regarding the circumstances of a vehicle collision present questions of fact and credibility that properly belong to the jury." Id.

In the present case, the Isaacs argue (and Defendant Tran incorporates these arguments) that there are numerous questions of fact as to whether or not the accident between Tran and Murray contributed to Mr. Harders' alleged injuries. Dkt. No. 55 at 5. The Isaacs maintain that Investigator MacIntosh's conclusions in his Collision Reconstruction Summary are conclusory and lack credibility as he discredited important physical evidence and failed to collect all of the relevant evidence in reaching these determinations. Id. at 5-6. First, the Isaacs argue that Investigator MacIntosh did not take measurements of the Murray vehicle to conclusively determine that it matched-up with the damage on the Tran vehicle's passenger side. Id. at 6. See Dkt. No. 55, Ex. H at 132. Investigator MacIntosh also did not perform a forensic analysis on the paint chips to scientifically determine which vehicle struck the Tran vehicle on the passenger side. Dkt. No. 55 at 6; Dkt. No. 55, Ex. H at 149. The Isaacs also point out that three of the vehicles involved in the collision were white: the Wal-Mart truck, the Schneider trailer and the Murray vehicle; and as such, the Isaacs maintain that there is nothing to indicate that one of these other vehicles did not cause the damage on the Tran vehicle that Investigator MacIntosh speculates belongs to the Murray vehicle. Dkt. No. 55, Ex. D.

In addition, the Isaacs argue the investigation shows that the front of the Schneider trailer had blue paint transfers and that the only vehicle involved in the collision that was blue was Defendant Tran's Daewoo. Dkt. No. 55 at 6; Dkt. No. 55, Ex. D and Ex. I at 52. This physical evidence further points to the possibility that an impact between the Schneider trailer and the Tran vehicle occurred despite Investigator MacIntosh's opinion to the contrary.

22

Investigator MacIntosh opines that the Murray and Tran accident had to occur after the Isaac and Tran accident because otherwise there is no explanation as to why the Murray vehicle impacted the Tran vehicle on the passenger side.  See Dkt. No. 55, Ex. H at 152.  However, as previously stated, it was never fully established that the Murray vehicle impacted the Tran vehicle on the passenger side.  Defendant Murray testified that he does not know where he impacted the Tran vehicle and no forensic testing was done nor measurements taken to conclusively establish where Defendant Murray impacted the Tran vehicle, and the first responder to the scene, Trooper Salatel, concluded in his MV-104A reports that the Murray vehicle side-swiped the Tran vehicle *before* the accident between the Tran vehicle and the Isaac  vehicle.  Dkt. No. 55, Ex. C.  As determined in the previously cited cases, Vavoulis, Mangual, and Burchette, when the sequence of impacts between vehicles cannot be determined and therefore proximate cause cannot be established, the issues should be brought before the jury to determine.

Defendant Murray argues that even assuming Murray acted negligently in colliding with the Tran vehicle, that Mr. Harders' collision would have occurred in the exact same manner even had Mr. Murray somehow avoided an accident while in the whiteout.  Murray Affadavit in Favor of Summary Judgment (Dkt. No. 43), ¶¶ 67, 68.  However, the Court does not find this argument persuasive.

First, assuming Trooper Salatel's conclusions from his investigation to be true, then the Murray vehicle side-swiped the Tran vehicle first and which caused the Tran vehicle to stop or slow-down in the driving lane.  Dkt. No. 55, Ex. C.  Due to the sudden stop by Defendant Tran in the whiteout conditions, the Isaac vehicle was caused to impact Defendant Tran which in turn resulted in the Schneider trailer striking the Isaac vehicle and most likely also the Tran vehicle.  In

23

other words, that negligence by Murray would have set the sequence of events to occur as they did.

Second, even if the Murray vehicle impacted the Tran vehicle exactly as Investigator MacIntosh would have us believe, it would have oriented the Tran vehicle on the freeway to undergo an impact with the Schneider trailer resulting, at least partially, in his alleged injuries. Although Defendant Murray contends that the Tran vehicle was not impacted by the Schneider trailer, the evidence of the paint discussed above points to the contrary. Indeed, Investigator MacIntosh did not even taken measurements of the damage to the Schneider trailer following the evidence to make sure that its damage did not match up to damage on Defendant Tran's vehicle. Dkt. No. 55, Ex. I at 60. Therefore, although no direct impact occurred between the Murray vehicle and the Schneider trailer, that does not absolve Defendant Murray from liability as a matter of law when his negligence caused another motorist to inflict injuries. See, Mullen v. Fayette, 274 A.D.2d 527, 85 N.Y.S.2d 64 (3d Dep't 1948); Finn v. Morgan, 46 A.D.2d 229, 362 N.Y.S.2d 292 (4th Dep't 1974).

Indeed, courts have held that even when there is no contact between the injured party and a particular motor vehicle, it does not absolve the operator of such vehicle from liability where his or her negligence in the operation of a vehicle caused another motorist to inflict injuries. See generally, id.; Mullen, 274 A.D.2d at 527 ("the fact that there was no contact between the [plaintiff] and the truck does not absolve [truck driver] from liability"). Rather, it is a question of fact for a jury to decide whether the operator of a motor vehicle who did not immediately inflict a plaintiff's injuries, but caused another motorist to inflict such damage was negligent, and if so, whether such negligence or that of the operator of the other vehicle, or the concurring negligence of both, was the proximate cause of the injuries. Hancock v. Steber, 208 A.D. 455, 204 N.Y.S. 258 (4th Dep't

1924).  Therefore, the Court concludes that simply because the Schneider trailor did not impact

Defendant Murray's vehicle, this does not mean that Mr. Murray was not negligent or that his

negligence on the freeway did not contribute and proximately and/or concurrently cause Mr.

Harders' alleged injuries.  As such, triable issues remain as to whether Mr. Murray was a proximate

cause of Harders' injuries.

However, even if summary judgment is not warranted for the cross-claims based upon

Defendant Murray's assertion that he was not the proximate cause of Plaintiff's injury, Defendant

Murray alternatively argues for summary judgment based upon the emergency doctrine.  And

because Defendant Murray's Co-Defendants have not raised arguments in opposition to Defendant

Murray's assertion of the emergency doctrine, he is only required to make a prima facie case for his

motion to warrant summary judgment.  Because the Court finds that Defendant Murray does make a

*prima facie* case for why the emergency doctrine applies in the action against him, he is also entitled

to summary judgment with respect to Co-Defendants' cross-claims against him.

As previously discussed, the first element of the emergency doctrine requires that the actor

faced with a sudden and unexpected situation which left him little to no time for deliberation.  The

second element requires that the actor acted as a reasonable and prudent person would once he was

in that situation.  Mr. Murray asserts "that the whiteout presented an emergency situation," and then

states that "[e]very driver who was deposed testified that the appearance of the whiteout was sudden

and unexpected."  Dkt. No. 37 at 8.  He cites a deposition in which Mr. Murray himself stated that

the onset of the whiteout was sudden and unexpected and left him with little or no time to

deliberate.  Dkt. No. 45, Ex. 7 at 17, 19, 78.  Defendant Murray has therefore made a *prima facie*

case with respect to the first element of the emergency doctrine.

With respect to the second element of the emergency doctrine, Murray cites evidence that Mr. Murray had only a matter of seconds to react, that he attempted to slow down once he was in the whiteout, and that visibility conditions in the whiteout made it impossible to see the Tran vehicle or avoid colliding with it.  Dkt. No. 37 at 9.  Murray's Co-Defendants presented no evidence that Mr. Murray failed to act reasonably once the emergency condition appeared.  Because Murray's Co-Defendants did not dispute his invocation of the emergency doctrine, they failed to provide the court with specific facts showing that there is a genuine issue of fact for trial.  The Court therefore concludes that summary judgment is also warranted for the cross-claims of Murray's Co-Defendants against him.

## IV.  CONCLUSION

For the foregoing reasons, it is:

**ORDERED**, that Guy Murray's Motion for summary judgment (Dkt. No. 36) is **GRANTED** with respect to both the claims and cross-claims again him; and it is further

**ORDERED**, that Estate of Lynn Tait Isaac and Peter Isaac's Motion for summary judgment (Dkt. No. 51) is **DENIED**; and it is further

**ORDERED**, that Estate of Trieu Tran and Tu Tran's Motion for summary judgment (Dkt. No. 52) is **DENIED**; and it is further

**ORDERED**, that the Clerk serve a copy of this Order on the parties.

**IT IS SO ORDERED**.

DATED:      December 14, 2010
            Albany, New York

Lawrence E. Kahn
U.S. District Judge

26